**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DARYL D. LAWRENCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-06-906-M** |
| | ) | |
| **MICHAEL J. ASTRUE,[1]** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

Daryl D. Lawrence ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying, in part, Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing his application seeking disability insurance benefits in July, 2003, alleging that he became disabled due to nerve damage and to pain in his lower back and legs caused by injuries suffered in a May 24, 2003, on-the-job accident [Tr. 63 - 65 and 71]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 32 - 34 and 36 - 37]; at Plaintiff's request an Administrative Law

[1]Effective February 1, 2007, Michael J. Astrue became Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as Defendant in this action.

Judge ("ALJ") conducted a hearing in February of 2005 where Plaintiff, who appeared with his attorney, and a vocational expert testified [Tr. 38 and 275 - 321]. The ALJ subsequently issued a partially favorable decision [Tr. 18 - 26] finding that while Plaintiff was disabled within the meaning of the Social Security Act from May24, 2003 – the date of the accident – until April 28, 2005, "[d]ue to medical improvement directly related to the ability to work, there have been a significant number of jobs in the national economy that the claimant could perform since April 28, 2005," and that Plaintiff had not been disabled since that date [Tr. 25]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 5 - 8], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart***,** 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff maintains that the ALJ's finding of medical improvement is not supported by substantial evidence, that his credibility assessment is contrary to the clear weight of the evidence, and that the testimony of the vocational expert cannot be relied upon as substantial evidence because the vocational expert's testimony was not consistent with

the *Dictionary of Occupational Titles*[2] and the ALJ failed to obtain a reasonable explanation for the inconsistency.

**Analysis**

**Medical Improvement**

As described by the ALJ, Plaintiff was a forty-three year old individual who had completed the tenth grade but variously reported that he had no reading ability and that he could read at a third-grade level [Tr. 20]. The ALJ noted that Plaintiff had past work experience – some at a skilled level – as a candy cook, a cleaner, a hotel housekeeper, a construction worker, a kitchen helper, a highway worker, and a maintenance mechanic. *Id.*

The ALJ's review of the medical records showed that Plaintiff suffered work-related injuries on May 24, 2003, with hospital records reflecting multiple fractures and injuries to the cervical, thoracic and lumbar spine and to the left ankle, head, right hip, and pelvis with associated injury to the urethra. *Id.* Plaintiff experienced residual effects including sexual dysfunction and bladder dysfunction that required treatment. *Id.* The ALJ concluded that "[Plaintiff's] severe injuries with accompanying pain were clearly disabling for a period of time." *Id.* As a result, the ALJ concluded that from May 24, 2003 – the date of the accident – until April 28, 2005, Plaintiff did not have the residual

[2]The *Dictionary of Occupational Titles* or "DOT" as published by the Department of Labor is one of several publications from which the Social Security Administration "will take administrative notice of reliable job information." 20 C.F.R. § 404.1566 (d) (1).

functional capacity[3] to perform even sedentary work on a regular sustained basis; after April 28, 2005, however, the ALJ found that the evidence established a medical improvement[4] in Plaintiff's condition which was directly related to his ability to work and that Plaintiff had the RFC for sedentary work with a sit/stand option [Tr. 25].

The ALJ's analysis was in keeping with the two-fold medical improvement test[5] explained in *Sheperd v. Apfel,* 184 F.3d at 1201:

> To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled. Then, in order to determine that medical improvement is related to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision. The ALJ must then compare the new RFC with the RFC before the putative medical improvements. The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence.

*Id.* (citations omitted).

It is Plaintiff's contention that he remains disabled and that the ALJ's medical improvement finding lacks evidentiary support. Plaintiff maintains that "[t]he ALJ refers to one (1) emergency room visit on April 28, 2005 as the definitive medical record from which he concludes that medical improvement has occurred" and that "[h]e does not discuss in a manner which would allow subsequent reviewers to determine what, if any

---

[3]Residual functional capacity ("RFC") "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545 (a) (1).

[4]*See* 20 C.F.R. § 404.1594 (a) ("We must determine if there has been any medical improvement in your impairment(s) and, if so, whether this medical improvement is related to your ability to work."); *Sheperd v. Apfel,* 184 F.3d 1196, 1200 (10th Cir. 1999) (the medical improvement standard is applicable to cases involving a closed period of disability).

[5]*See* 20 C.F.R. § 404.1594 (b) (7) and(c) (2).

weight was attributed to any records except the one emergency room record in which Claimant was seeking treatment for his back." [Doc. No. 18, pp. 9 - 10].

Contrary to Plaintiff's claim, the ALJ first both referenced and discussed the medical records involving Plaintiff's accident, concluding that "claimant's severe injuries with accompanying pain were clearly disabling for a period of time" [Tr. 20] and determining that "[f]rom May 24, 2003 to April 28, 2005, the claimant did not have the residual functional capacity to perform even sedentary work on a regular sustained basis." [Tr. 25]. The ALJ further determined from his review of the medical records that by April 20, 2004, "a good deal of medical improvement had occurred." [Tr. 21]. The ALJ based this finding, in part, on the records of Shawn Smith, M.D., a treating physician [Tr. 21 and 232 - 242]. Plaintiff was referred to Dr. Smith by his surgeon[6] for chronic pain management [Tr. 238]. Dr. Smith, following multiple changes of medication therapy and after consultation with Plaintiff's surgeon, ultimately concluded that Plaintiff had "a bad back" and few "options left for him with regards to additional treatment interventions" [Tr. 232 and 234 - 242]. While acknowledging Plaintiff's continued pain and need for medication, Dr. Smith nonetheless stated that

> At this point in time, I recommend that [Plaintiff] be retrained or reassigned to a sedentary-type work place with no lifting, bending or stooping. He may need frequent rest breaks or standing/sitting periods limited to two-to-

[6]It is worth noting that by June 16, 2003, Plaintiff's surgeon reported that Plaintiff "probably will be off work for the next four to six months unless there is a job that can be done that is mainly a sitting job, such as answering phones." [Tr. 216].

> three hours at a time. He can work up to eight hours a day with no long distance walking, secondary to pain and the need for a cane.[7]

[Tr. 232]. The ALJ concluded that "[i]n effect, [Dr. Smith] found residual functional capacity for sedentary work with a sit/stand option." [Tr. 21].

The ALJ then addressed the report of Plaintiff's April 28, 2005, emergency room examination[8]:

> The Administrative Law Judge has given the claimant the benefit of any doubt in this case by finding that clear evidence of maximum medical improvement did not occur until April 28, 2005. As of April 28, 2005, the claimant's medical condition had improved significantly. This improvement is reflected in the medical evidence. It appears from the available medical reports that the claimant's fractures healed and that examinations of other body symptoms were negative.

*Id.*

It is clear from his decision that the ALJ found significant medical improvement by April 20, 2004, when the treating pain management physician opined that Plaintiff – despite continued pain and need for medication therapy and a cane – was able to perform sedentary work with a sit/stand option on a full-time basis, thus providing objective medical evidence in support of an increase in RFC [Tr. 21]. By extending Plaintiff's disability status until April 28, 2005, the ALJ generously gave Plaintiff the benefit of any doubt based on a medical examination which resulted in normal findings, revealing only the continued back pain already acknowledged and accommodated by treating physician Smith's restriction to sedentary work with a sit/stand option. *Id.*

---

[7]In this same report, Dr. Smith noted that, "[Plaintiff] ambulates with a cane at varying paces and varying abilities depending on who is watching him." [Tr. 232].

[8][Tr. 263 - 266].

The ALJ properly applied the medical improvement standard, and his findings are supported by substantial evidence.

**Credibility**

It is Plaintiff's contention that he remains unable to perform work at any exertional level as a result of his medical condition and resulting pain. The ALJ summarized Plaintiff's testimony as follows:

> The claimant was born August 30, 1961. He testified that he had completed 10th grade (but that he could not read or write anything other than his name); that he had settled his worker's compensation claim and used most of the money for child support for his children; that, as supervisor at Sunbelt Oil Company, he had been a lead worker but had done no hiring or firing; that no surgery had been advised for his back; that he continued to have back pain and pain in the right leg; that he had last seen his doctor on August 4, 2004; that he experienced back pain while standing; that he could walk 50 feet with a walker; that he could dress himself; that he took Tylenol for pain; that medication caused him to become "groggy"; and that his activities included watching television; visiting with people in his bed room; and preparing simple meals such as sandwiches.

[Tr. 22]. Considering Plaintiff's subjective complaints in light of the evidence of record, the ALJ then concluded that "the current medical evidence does not support a finding of inability to perform at least a wide range of sedentary tasks" and that Plaintiff's subjective complaints "have not been sufficiently credible to support a finding of inability to work on or after April 28, 2005." *Id.* In this connection, the ALJ took specific issue with Plaintiff's claimed illiteracy. *Id.*

Plaintiff maintains that "[t]he ALJ's credibility finding is contrary to the clear weight of the evidence." [Doc. No. 18, p. 10]. By way of support, he points to evidence establishing that his back condition is not susceptible to surgical treatment and to

evidence of his continued need for medication; Plaintiff also underscores his testimony with regard to pain when standing. *Id.* at 10 - 11. As to the question of his alleged illiteracy, Plaintiff argues

> Claimant testified that he could not read, but he could write what someone else spelled out for him. That his friend, Sheila, filled out the forms for SSA. This supports the Claimant's testimony regarding his illiteracy.

*Id.* (record references omitted).

As previously detailed, the opinion of Plaintiff's treating pain management physician, Dr. Smith, provides an evidentiary basis for the ALJ's conclusion that despite a non-operable back, chronic back pain and ongoing medication needs, Plaintiff had recovered the capacity to work at the sedentary exertional level and was not totally disabled [Tr. 232 - 233]. The ALJ's conclusion – that Plaintiff's claim of continuing, total disability was not credible – is well-supported by the evidence of record. With respect to Plaintiff's claimed illiteracy,[9] the ALJ provided specific reasons in support of his determination that such a claim lacked credibility [Tr. 22]. He noted that Plaintiff had a tenth grade education [Tr. 22 and 282], that Plaintiff had indicated in his administrative filings that he was able to read at least at a third grade level [Tr. 22, 71, 80, 85 and 91] and, "that the evidence shows a prior history of having performed skilled jobs and other work that would reasonably be expected to involve at least minimal reading and writing abilities." [Tr. 22]. Substantial evidence supports the ALJ's

---

[9]Plaintiff testified at his administrative hearing that, "I'm not able to read." [Tr. 285]. When asked to explain why he advised a Social Security representative who was completing his administrative filings that he could read at a third grade level, Plaintiff stated, "I took a test once, and that's basically they said I was at a third grade level, but really not in reading or nothing like that." [Tr. 286]. He testified that he was unable to read either a newspaper or a street sign. *Id.*

conclusion that Plaintiff's claims with regard to his literacy were inconsistent; accordingly, the ALJ properly discounted the credibility of Plaintiff's statements. *See* Social Security Report 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

The ALJ's assessment of Plaintiff's credibility will "not be upset if supported by substantial evidence." *White v. Massanari,* 271 F.3d 1256, 1261 (10th Cir. 2001). "'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Secretary of Health & Human Services,* 898 F.2d 774, 777 (10th Cir. 1990)). The ultimate question on review is not whether the reviewing court agrees with the ALJ's factual findings or whether another fact-finder might have come to a different conclusion. A reviewing court may "neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 800 (10th Cir. 1991). The ultimate question, instead, is whether the ALJ's finding is supported by substantial evidence in the record as a whole and the answer here is clearly affirmative.

**Vocational Testimony**

Plaintiff's argument with regard to whether the ALJ could properly rely on the testimony of the vocational expert hinges on the issue of Plaintiff's claimed illiteracy. In his hypothetical question to the vocational expert, the ALJ asked the expert to identify work positions suitable for an individual with various restrictions including illiteracy;

the expert identified three such positions [Tr. 310 - 312]. Plaintiff maintains that as described in the *Dictionary of Occupational Titles,* at least two of the jobs require higher language and math[10] abilities than those claimed to be possessed by Plaintiff. The ALJ, however, subsequently determined that Plaintiff's claims regarding his literacy were not credible, basing that determination, in part, on previous skilled and unskilled work that Plaintiff had performed[11] [Tr. 22]. Consequently, neither illiteracy nor any other educational deficit was included as a limitation in Plaintiff's RFC assessment [Tr. 23], an assessment unchallenged here by Plaintiff. Thus, even were there an unresolved inconsistency between the vocational expert's testimony and the *Dictionary of Occupational Titles* with regard to language and related abilities, it was not pertinent to the ALJ's ultimate determination. Any error by the ALJ in failing to inquire whether the vocational expert's testimony was consistent with the *Dictionary of Occupational Titles* is harmless.

**RECOMMENDATION AND NOTICE OR RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by May 28, 2007, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this

[10]Plaintiff never claimed to be limited mathematically. He had a number of opportunities to raise such a limitation but repeatedly advised the ALJ that, "I can count." [Tr. 310].

[11]The ALJ determined that "the evidence shows a prior history of having performed skilled jobs and other work that would reasonably be expected to involve at least minimal reading and writing abilities." [Tr. 22].

Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 7th day of May, 2007.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE